NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of the Estate of:

MICHELE E. DAVIS, *Deceased*

STEVE ERLICK, *Petitioner/Appellee,*

*v.*

JOHN DAVIS, *Defendant/Appellant.*

No. 1 CA-CV 22-0140
FILED 5-30-2023

Appeal from the Superior Court in Maricopa County
No. PB2015-001198
The Honorable Thomas L. Marquoit, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

John Davis, Eloy
*Defendant/Appellant*

Mazza + Niro, PLC, Scottsdale
By Stephen J.P. Kupiszewski, Daniel J. Mazza, Bri Niro, Jennifer L.
Kupiszewski,
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Anni Hill Foster joined.

---

**T H U M M A**, Judge:

¶1        In this probate matter, John Davis appeals from an order closing the estate of Michele Elizabeth Davis (Michele) and releasing the estate's personal representative. Because Davis has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        In March 2015, Davis repeatedly stabbed Michele, in front of their children, killing her. Davis was immediately taken into custody and has remained in custody ever since. He later pled guilty to second degree murder, a Class 1 dangerous felony and a Domestic Violence Offense. As specified in the plea, Davis was sentenced to 25 years "flat time" in prison.

¶3        Days after his arrest, Davis provided his mother, Carol Maloney, a written power of attorney and directed her to take possession of and liquidate the estate's assets, including Michele's interest in a Goodyear, Arizona, house. In response, Michele's uncle filed an Emergency Petition for Formal Appointment of Special Administrator. Following an April 2015 hearing, the court granted that petition. On May 1, 2015, Michele's father Steve Erlick (PR) filed a Verified Petition for Formal Appointment of Personal Representative (PR Petition).

¶4        Although noting Michele had signed a disclaimer/quitclaim deed in favor of Davis for the house, both petitions alleged the house was purchased during the marriage with marital funds and that Michele had a community interest in the property. The PR Petition also alleged Michele signed the quitclaim deed "under duress and without consideration," meaning she retained a community interest in the house at the time of her death. The PR Petition sought (among things) an order granting "an estate interest, based upon the community interest, in all real property, bank accounts and vehicles held in the name of John Davis." The court set, and later held, a May 26, 2015 hearing on the PR Petition.

**¶5**        As reflected in a Certificate of Service filed with the court, on May 7, 2015, the PR personally served Davis in the Fourth Avenue Jail with the PR Petition, the notice of hearing and related documents. On May 11, 2015, the PR published notice of the hearing in *The Record Reporter*. Davis did not timely file a written response contesting the PR Petition. *See* Ariz. R. Prob. P. 17(D) (requiring that, for an objection to be timely, "[a]ny interested person who opposes the relief requested in the petition shall file with the court, at least three days before the hearing," an objection) (2015).[1] Nor did Davis seek a transportation order to attend the hearing so that he could "appear . . . and orally object to the petition." Ariz. R. Prob. P. 17(D) (2015).

**¶6**        At the May 26, 2015 hearing, the PR provided the court copies of, among other things, the notice of hearing, stating "Davis was personally served." Maloney also was present, having come from California. The PR testified that, given the circumstances, he did not anticipate distributing assets to Davis. After noting no objections had been filed, the court granted the PR Petition and appointed the PR. The resulting order, issued May 26, 2015, found Arizona's "Slayer Statute" applied, meaning Davis would not be an estate beneficiary. *See* Ariz. Rev. Stat. (A.R.S.) § 14-2803. The court also granted "an estate interest, based upon the community interest, in all real property, bank accounts and vehicles held in the name of" Davis. Davis did not timely object to that order.

**¶7**        In late June 2015, the PR moved for authority to sell the house, noting the PR Petition "alleged that the residence was community property and no objection was made." The court set a "non-appearance" hearing for August 2015 to consider the motion.

**¶8**        In mid-July 2015, Davis asked the court to deny the motion to sell the house. Claiming he was "never informed of the" PR Petition, Davis argued he "did not have [an] opportunity to file a motion objecting" to the PR Petition. Davis argued he "was not present on the May 26th, 2015 court hearing due to . . . being incarcerated and th[e] court did not request" that he be transported to the hearing, which he claimed violated his due process rights. Conceding the house was purchased during the marriage, Davis alleged Michele had "bad credit" at that time and she was not listed on the loan to facilitate financing. Davis also alleged Michele signed away her

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated. The rules have changed since the May 2015 hearing, with the current counterpart set forth in Rule 15(e).

interest in the property "for the bank to approve the loan." Arguing the house was his sole and separate property, Davis asked the court to deny the PR's request for authority to sell the house.

¶9         Davis filed his own motion for authority to sell the house, asking that the court allow Maloney, as his power of attorney, to sell the property. The PR opposed the motion, noting that Davis (1) had been personally served with the PR Petition, notice of hearing and related documents on May 6, 2015; (2) had not sought a transportation order to the hearing and the court was under no sua sponte obligation to secure transportation for him and (3) had more than two weeks to object in writing to the PR Petition but failed to do so. "Therefore, Mr. Davis is outside of his timeframe to make any objections and/or respond to the" PR Petition. The PR also noted Davis "was given the opportunity to object that the property was community property; however, he did not. The Court concluded the marital home was community property at the" May 26, 2015 hearing.

¶10         The court later granted the PR's motion and denied Davis' motion. In doing so, the court reaffirmed the May 26, 2015 ruling that the estate had a half interest in the house, representing Michele's interest at the time of her death, and granted the PR the authority to sell the house.

¶11         Starting on August 21, 2015, the PR published three weekly notices to creditors in *The Record Reporter*, stating that claims against the estate had to be made within four months after the first notice or they would be barred. Also in August 2015, the PR provided the court with proof of mailing an inventory and appraisement to the decedent's heirs and devisees. Substantial additional litigation followed.

¶12         By August 2017, the court granted the PR's request that Davis be designated a vexatious litigant. *See* A.R.S. § 12-3401; Ariz. R. Prob. P. 10(G) (2017). Among other things, the court noted Davis had "repeatedly filed" unauthorized documents "that unreasonably expand and/or delay the proceedings" and that he made repeated filings "that argue points and request relief for matters that have been the subject of previous rulings . . ., including but not limited to ownership of a title to a residence." The order designating him a vexatious litigant required Davis obtain leave of court before making new filings.

¶13        In mid-2021, the PR petitioned to close the estate and be released as personal representative, also requesting attorneys' fees and costs. Davis opposed the petition and the court held an evidentiary hearing in December 2021. The PR and one of Davis' former neighbors testified, and Davis cross-examined them. Davis sought to call Maloney as a witness, but the court sustained the PR's objection because Davis had not disclosed her address or phone number. Davis testified on his own behalf.

¶14        After considering the filings, evidence and argument, the court issued a six-page minute entry granting the PR's petition and awarding the PR about $15,000 in attorneys' fees and costs. Davis timely appealed. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(2).

## DISCUSSION

¶15        Although claiming 15 reversible errors on appeal, Davis does not challenge the finding that the Slayer Statute applies. The Slayer Statute provides, among other things, that a "person who feloniously and intentionally kills the decedent forfeits all benefits under [the Probate Code] with respect to the decedent's estate." A.R.S. § 14-2803(A); *accord Castro v. Ballesteros–Suarez*, 222 Ariz. 48, 53 ¶ 16 (App. 2009) (explaining Slayer Statute means "a killer cannot profit from that person's wrong").

¶16        In considering Davis' arguments on appeal, this court will not set aside the court's "findings of fact unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of witnesses." *Matter of Ghostley*, 248 Ariz. 112, 115 ¶ 8 (App. 2020) (citation omitted). This court reviews legal conclusions de novo, *id.*, including the characterization of property as separate or community, *Bell–Kilbourn v. Bell–Kilbourn*, 216 Ariz. 521, 523 ¶ 4 (App. 2007).

## I.    Davis Has Shown No Error in the Court's Determination that the House Was Community Property.

¶17        Davis argues the court erred in finding the house, purchased during the marriage with community funds, was community property. As noted above, after being served with the Verified PR Petition in early May 2015, Davis failed to timely object to the allegations in that pleading. Based on the allegations in the verified PR Petition and the evidence received on May 26, 2015, the court determined that the house was community property. That finding allowed the PR to properly obtain orders to sell the house, given the estate's one-half interest in the property.

5

¶18 Davis argues the court erred in finding that Michele's disclaimer/quitclaim deed was unenforceable given the allegation that she signed the deed "under duress and without consideration." *See, e.g.*, *Inter-Tel, Inc. v. Bank of Am., Ariz.*, 195 Ariz. 111, 117 ¶ 36 (App. 1999); *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 356 (App. 1986). As noted above, Davis waived any challenge to that determination when he failed to timely object to the verified PR Petition. *Cf.* Ariz. R. Prob. P. 17(D) (2015) & Comment; *id.* at 3(A) (2015) (stating Ariz. R. Civ. P. apply "[u]nless otherwise provided); Ariz. R. Civ. P. 11(c) (2015) (requiring that response to verified pleading seeking equitable relief must be under oath). And for these same reasons, Davis' argument that the court improperly treated other property (including cars) as community property fails.

¶19 Moreover, whether a party acted under duress is a question of fact, *see Inter-Tel*, 195 Ariz. at 117, and Davis has not shown that the superior court's determinations were not supported by the record or were clearly erroneous, *see State v. Hulsey*, 243 Ariz. 367, 377 ¶ 17 (2018); *see also John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 537 (App. 2004) ("We defer to the trial court with respect to any factual findings explicitly or implicitly made, affirming them so long as they are not clearly erroneous . . . ."); *In re Harber's Est.*, 104 Ariz. 79, 89 (1969) (court "will be deemed to have made every finding of fact necessary to support its judgment"). For these reasons, Davis has shown no error.

## II.     Davis Was Provided Sufficient Notice and Time to Present Claims.

¶20 Davis argues the court erred in finding the PR "complied with A.R.S. § 14-3801, giving written notice to" Davis. The PR, however, complied with that requirement by both personally serving Davis with the PR Petition and notice of hearing and also publishing in *The Record Reporter*. Davis has shown no right to additional notice, particularly given the application of the Slayer Statute. Because Davis had no claim against the estate, he was not a "reasonably ascertainable creditor" that required further notice. *Cf. In re Estate of Travers*, 192 Ariz. 333, 335 ¶ 14 (App. 1998) (individual or entity with a claim against the estate is a reasonably ascertainable claimant).

**¶21** Davis also argues the court erred in finding the time for presenting claims had expired. The PR published the required notice in *The Record Reporter* for three consecutive weeks starting August 21, 2015, advising that claims against the estate had to be made within four months or they would be barred. *See* A.R.S. § 14-3801(A). Davis, however, did not present his claims against the estate until August 2021, years after that time expired. Again, Davis has shown no error.

**III. Davis Has Shown No Reversible Error at the December 2021 Evidentiary Hearing.**

**¶22** Davis argues various errors occurred at the December 2021 evidentiary hearing. Addressing his arguments in turn, he has shown no reversible error.

**¶23** First, Davis claims the court erred by not allowing Maloney to testify. Davis, however, failed to disclose her address and telephone number, which he claimed were "confidential." Moreover, Maloney ignored at least three subpoenas to take her testimony. As a result, the PR could not depose Maloney. The superior court has broad discretion in addressing disclosure issues. *See Marquez v. Ortega*, 231 Ariz. 437, 441 ¶ 14 (App. 2013). Davis has shown no error in the court precluding Maloney from testifying.

**¶24** Second, Davis argues the court erred in denying him leave to supplement the record with "Exhibits 25 and 26." The court, however, concluded that the exhibits Davis sought to offer (other than prior filings, which the court took judicial notice of under Ariz. R. Evid. 201) either lacked foundation or were not relevant. On the record presented, Davis has shown no abuse of discretion in those conclusions. *See McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 258 ¶ 44 (App. 2013) ("[C]hallenges to the court's admission or exclusion of evidence [are reviewed] for an abuse of discretion.").

**¶25** Third, Davis argues the court erred by finding he "did not meaningfully impeach" a witness. The superior court at trial, not this court on appeal, assesses witness credibility. *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 295 ¶ 10 (App. 2000); *see also Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009) ("We must give due regard to the trial court's opportunity to judge the credibility of the witnesses."). Davis has shown no error.

¶26 Fourth, and similarly, Davis has shown no error in the superior court's conclusion that the PR "was very familiar with the contents of" the house. The evidence supports this conclusion. Moreover, the possibility that the court could have reached a different conclusion does not show error. *See In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. at 296 ¶ 16 (citations omitted).

¶27 Fifth, Davis has failed to show the superior court erred in allowing the PR to testify that certain personal property had an estimated value of $2,500. Noting that Davis objected that the PR "was not a fiduciary so his estimate of value was outside of his expertise," the superior court cited case law allowing an owner to estimate value of the owner's property "whether he qualified as an expert or not." *See Atkinson v. Marquart*, 112 Ariz. 304, 307 (1975). Although the PR was not the owner, the court noted "he testified to familiarity with the items of the same nature that an owner would normally do," adding Davis (1) prevented Michele from being able to testify to their value and (2) did not provide "any evidence or argument that the proposed value . . . was inaccurate or excessive." Moreover, how the PR "arrived at that value merely goes to the weight" of his testimony, not admissibility. *See Santa Fe Pacific R.R. Co. v. Cord*, 14 Ariz. App. 254, 265 (1971) (affirming admissibility of trustee on valuation of trust claims) (citation omitted); *see also* Ariz. R. Evid. 602; 701. On this record, Davis has not shown the court committed reversible error in allowing the PR's valuation testimony.

## IV. Davis Has Shown No Error in His Designation as a Vexatious Litigant.

¶28 Davis seeks to challenge the court's August 2017 order declaring him to be a vexatious litigant. Whether such a determination may be challenged in an appeal depends on the type of order designating a party a vexatious litigant. If a party is designated a vexatious litigant in an administrative order, this court lacks appellate jurisdiction to consider such a challenge. *Madison v. Groseth*, 230 Ariz. 8, 13 ¶ 16 n.8 (App. 2012). The designation here was in an August 2017 order, not an administrative order, meaning it could have been challenged in a timely appeal. *See id.* Such an order "may be appealed, notwithstanding [its] interlocutory nature" without finality certification. *Brumett v. MGA Home Healthcare, LLC*, 240 Ariz. 420, 430 ¶ 19 (App. 2016). Davis, however, did not timely appeal from that August 2017 order, waiting years to first seek to challenge the ruling on appeal. *See* ARCAP 9(a). Even if this court had appellate jurisdiction over the order, Davis has shown no error by the superior court finding that he

unreasonably expanded or delayed court proceedings and designating him a vexatious litigant. *See* A.R.S. § 12–3201(E)(1)(b).[2]

## V.    Davis Has Shown No Other Reversible Error.

**¶29**    Davis challenges various other actions by the superior court but has shown no reversible error. Although complaining that, during the April 2015 hearing, the court expressed familiarity with the Slayer Statute, how it applied in similar cases and stated "I can't imagine" when told how Michele's murder had affected her mother and the PR, Davis has not tried to tie these actions to any ruling he challenges. *See Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 63 ¶ 29 (App. 2010) (noting party challenging judicial impartiality has the burden to overcome presumption of partiality by a preponderance of the evidence).

**¶30**    Davis also claims a violation of his rights and judicial bias when the superior court noted Davis' credibility issues "are substantial due to his violent felony conviction." Davis argues that his "Second Degree Murder conviction has no weight on" his "credibility or candor." Davis' arguments, however, are contrary to the law. *See, e.g.*, Ariz. R. Evid. 609(a) (allowing admissibility of a felony conviction to "attack[] a witness's character for truthfulness"); *see also Brown v. Dembow*, 248 Ariz. 374, 378 ¶ 15 ("Stated bluntly, the common law view was that felons were prone to lie (and could be impeached with felony convictions), while misdemeanants were not."). And as to Davis' general allegations of improper bias or wrongdoing by at least three different judicial officers, the record does not support his claims. Again, Davis has shown no error.

---

[2] Relatedly, Davis has shown no error in the court's denying his October 2021 "Motion For Leave To File his Petition For An Order To Enforce Claim Against [Personal Representative] For Effects of Fraud." The superior court found Davis provided no good cause for the motion. Davis cites no authority to support his argument that this conclusion was in error. Additionally, although denial was without prejudice, Davis never sought to show good cause to refile the motion or reassert this claim in any way. And the allegations in the proposed petition sought to relitigate the allocation of community property, which was time-barred. *See* A.R.S. § 14-3803. Finally, this court rejects any attempt by Davis to ask this court on appeal to find the PR acted fraudulently. *See State v. Schackart*, 190 Ariz. 238, 247 (1997) (appellate court "does not act as a fact-finder").

## VI. Davis Lacks Standing to Challenge the PR's Compliance with A.R.S. § 14-3706.

¶31      Davis argues the court erred in finding the PR complied with A.R.S. § 14-3706, which requires the personal representative to provide an inventory of property owned by the decedent within 90 days of being appointed. Davis argues that the PR, instead, mailed the inventory 91 days after being appointed. Davis has shown no injury as a result and, also recognizing the Slayer Statute applies, Davis lacks standing to assert any such claim. *See Fernandez v. Takata Seat Belts, Inc.*, 210 Ariz. 138, 140 ¶ 6 (2005).

## VII. Davis Has Shown No Error in The Superior Court's Awarding the PR Attorneys' Fees.

¶32      Before the December 2021 hearing, the PR timely requested an award of attorneys' fees under A.R.S. § 12-349(A)(3), which allows for fees if the opposing party unreasonably expands or delays the proceeding. Over Davis' objection, the court granted the request, awarding the PR fees and costs totaling slightly more than $15,000. The court found Davis unreasonably expanded and delayed the proceeding by making filings without the court's permission, in violation of the vexatious litigant order and A.R.S. § 12-3201(B). The court also found Davis, a non-lawyer, improperly engaged in the unauthorized practice of law by filing a claim against the estate on behalf of another person.

¶33      Although contending the court erred in awarding fees, by failing to cite any authority supporting his claim of error, Davis' argument fails. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591 ¶ 33 (App. 2011). The record shows that Davis made many filings that unreasonably expanded and delayed the proceeding. *See Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 421–22 ¶¶ 29–30 (App. 2010). The record also shows that Davis made many filings without prior leave of the court in violation of the vexatious litigant order. The record further shows Davis filing claims against the estate on behalf of another person. On this record, Davis has shown no error. *See Maleki v. Desert Palms Pro. Props., L.L.C.*, 222 Ariz. 327, 334 ¶ 32 (App. 2009).

## VIII. Attorneys' Fees on Appeal.

¶34      Davis seeks attorneys' fees and costs incurred on appeal under A.R.S. §§ 12-341 and -342. Because he is self-represented and has shown no basis for an award of fees, his request for fees is denied. Because he is not the successful party, his request for costs is denied.

¶35 The PR seeks attorneys' fees and costs incurred on appeal under A.R.S. §§ 14-1105 and 12-342. In the court's discretion, it denies the PR's request for attorneys' fees. As the prevailing party, however, the PR is awarded taxable costs contingent upon compliance with ARCAP 21.

## CONCLUSION

¶36 The order closing the estate of Michele Elizabeth Davis and releasing the estate's personal representative is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA